09:32:24    1                 UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3              HONORABLE STANLEY BLUMENFELD, JR., DISTRICT JUDGE

4

5

   HOWARD EHRENBERG, et al.,            )
6                                        )
              Plaintiffs,               )
7                                        )
                   vs.                  )
8                                        )   2:22-CV-1136-SB
   THE WALT DISNEY COMPANY,             )
9                                        )
              Defendant.                )
10  _____)

11

12

13                  REPORTER'S TRANSCRIPT OF HEARING

14                      Los Angeles, California

15                      Friday, July 15, 2022

16

17

18              _____

19

20

21

22                  AMY DIAZ, RPR, CRR, FCRR
                    Federal Official Reporter
23                  350 West 1st Street, #4455
                    Los Angeles, CA 90012
24

25       *Please order court transcripts here:  www.amydiazfedreporter.com*

1       APPEARANCES OF COUNSEL:

2

        For the Plaintiffs:

3

4                       KING HOLMES PATERNO & SORIANO, LLP
                        By:  Stephen Rothschild, Attorney at Law
5                       1900 Avenue of the Stars, 25th Floor
                        Los Angeles, California 90067
6

7

8

9       For the Defendant:

10

                        MUNGER TOLLES & OLSON LLP
11                      By:  Brandon Martinez, Jr., Attorney at Law
                        350 South Grand Avenue, Suite 5000
12                      Los Angeles, California 90071

13

14

15

16

17

18

19

20

21

22

23

24

25

1 09:32:25          THE CLERK:  Calling item 7, case number 22-CV-1136,
2 09:32:29   Howard Ehrenberg vs. The Walt Disney Company.
3 09:32:32          Counsel, please state your appearance, starting with
4 09:32:33   the plaintiff.
5 09:32:37          MR. ROTHSCHILD: Good morning, Your Honor.  Steven
6 09:32:40   Rothschild in person for the plaintiffs.
7 09:32:42          THE COURT:  Good morning, Mr. Rothschild.
8 09:32:46          MR. MARTINEZ: Good morning, Your Honor.  Brandon
9 09:32:48   Martinez on behalf of the Defendant The Walt Disney Company.
10 09:32:51          THE COURT:  And Mr. Rothschild, you did receive the
11 09:32:53   Court's minute order where I did actually grant you
12 09:32:55   permission to appear remotely.  I did reflect further and
13 09:32:58   thought under the circumstances my initial reaction was a bit
14 09:33:01   rash.
15 09:33:02          MR. ROTHSCHILD: I did, and I thank you for it.
16 09:33:04   There were other considerations that brought me back home.
17 09:33:07          THE COURT:  Understood.
18 09:33:09          All right.  So the Court has issued a tentative.
19 09:33:12   And at the last proceeding we started the argument, but were
20 09:33:16   not able to proceed much farther.
21 09:33:19          So let me hear, since the tentative is largely
22 09:33:23   against Walt Disney, I'll hear from counsel on that.
23 09:33:27          Before I do so, let me just make sure that everyone
24 09:33:31   is aware, I believe this is being -- this proceeding is being
25 09:33:35   broadcasted.  So there is no photographing, recording,

1 09:33:40  broadcasting or rebroadcasting or republishing of these
2 09:33:44  proceedings.  That is all strictly prohibited.

3 09:33:47       So let me hear from Disney's counsel.

4 09:33:55       MR. MARTINEZ: Thank you, Your Honor.  And I would
5 09:33:56  just like to extend on behalf of my colleague, Ms. Cox, my
6 09:34:00  gratitude to the Court and Counsel with respect to last week.

7 09:34:00       THE COURT:  Well, I hope she's feeling better.  It
8 09:34:02  was obvious to the Court that she was attempting to be a good
9 09:34:06  soldier, so to speak, but was clearly under the weather.

10 09:34:09       MR. MARTINEZ: We appreciate that, Your Honor.

11 09:34:10       So I have three targeted points I would like to make
12 09:34:13  with respect to the Court's tentative.

13 09:34:14       The first two points concern plaintiffs' claim on
14 09:34:18  the alleged 1980s contract, and then the third point concerns
15 09:34:22  the tentative's 12(b)(6) ruling on protectability of
16 09:34:28  plaintiffs' alleged contributions to the *Muppet Babies*
17 09:34:31  series.

18 09:34:32       I'll start with the 1980s contract claim on which I
19 09:34:35  have a couple of points.

20 09:34:36       On page 10, the Court's tentative concludes that
21 09:34:40  plaintiffs have stated a viable claim for breach of contract
22 09:34:44  based on the premise that they have alleged a purely oral
23 09:34:48  contract between Mr. Scott and Marvel.  We don't read the
24 09:34:52  First Amended Complaint, or understand the First Amended
25 09:34:55  Complaint to allege an oral agreement between -- or at least

09:34:58   a purely oral agreement between Mr. Scott and Marvel.

09:35:02         And that point is underscored, Your Honor, by page

09:35:06   18 of plaintiffs' opposition brief, in which they

09:35:09   characterize -- in which they don't characterize their 1980s

09:35:15   contract as an oral contract, but rather, as a "partly oral

09:35:20   and partly implied agreement."

09:35:22         They then go on, on page --

09:35:26         THE COURT:  What is the difference between partly

09:35:27   oral and partly implied, and an oral agreement that has

09:35:31   implied terms?

09:35:33         MR. MARTINEZ:  Your Honor, I don't think there is a

09:35:36   difference between those two concepts.  I think that the

09:35:39   difference I'm trying to highlight is that the tentative

09:35:43   rests on the premise -- this portion of the tentative, I

09:35:45   should say -- rests on the understanding that plaintiff is

09:35:47   alleging an oral agreement; some of the terms of which happen

09:35:51   to be reflected in writings that Mr. Scott had rejected.

09:35:54         That is very different from a contract between the

09:35:58   parties, some terms of which were oral and some terms of

09:36:01   which were implied by conduct.

09:36:03         THE COURT:  Well, let me just pause you for a

09:36:05   moment.

09:36:05         Mr. Rothschild, which is it?

09:36:07         MR. ROTHSCHILD:  Your Honor, this is a little bit

09:36:11   above my head.

1 09:36:12        The fact is that there were oral discussions that

2 09:36:15   resulted in an agreement that Mr. Scott would write scripts

3 09:36:18   for certain compensation.  There was an exchange of writings

4 09:36:21   that had some terms in it that were not implemented, that had

5 09:36:26   some terms in them that were implemented, that he wrote the

6 09:36:29   show for several years, that they paid him pursuant to the

7 09:36:33   understanding of the agreement, and that Disney didn't.

8 09:36:37        Whether you -- how many angels can dance on the head

9 09:36:42   of a pin in terms of how you characterize it, the bottom line

10 09:36:48   is there were terms, there was an agreement, there was

11 09:36:52   performance.

12 09:36:53        THE COURT:  Well, I appreciate the analogy here, but

13 09:37:01   let me just use one that is more legalistic, and that is:

14 09:37:05   You are the master, your client is the master of the

15 09:37:07   Complaint, and your client has an obligation to assert a

16 09:37:12   well-pleaded claim.

17 09:37:13        And what is the well-pleaded claim?  Is it a breach

18 09:37:18   of an oral agreement, a breach of a written agreement, a

19 09:37:21   breach of an implied agreement, none of the above?

20 09:37:24        MR. ROTHSCHILD:  Breach of an oral agreement.  And to

21 09:37:29   the extent that the oral agreement didn't cover every term,

22 09:37:35   the performance of the parties creates an implication that

23 09:37:39   they agreed to those terms because they abided by them.

24 09:37:43        I think, as Your Honor's tentative characterizes it,

25 09:37:48   I think that is accurate.

109:37:51          THE COURT:  So under what legal theory would the

209:37:56   subsequent conduct form the basis for the agreement, and what

309:38:01   type of agreement would it be?

409:38:03          MR. ROTHSCHILD: Again, it's an oral agreement, and

509:38:06   it was ratified by conduct consistent with the oral terms of

609:38:12   the agreement.

709:38:13          THE COURT:  So your theory is that this was an oral

809:38:18   agreement, and the terms of the agreement were reflected in

909:38:22   the oral exchange on the terms, and then to the extent that

1009:38:27   there were some terms that were not filled in directly

1109:38:31   through the oral exchange, the subsequent conduct fills in

1209:38:36   those voids?

1309:38:37          MR. ROTHSCHILD: Yes.

1409:38:38          THE COURT:  But ultimately, it's an oral agreement?

1509:38:41          MR. ROTHSCHILD: Correct.

1609:38:41          THE COURT:  All right.  Let me return to

1709:38:43   Mr. Martinez.

1809:38:45          MR. MARTINEZ: I would just say, Your Honor,

1909:38:46   respectfully, if the contention is that there -- that the

2009:38:51   parties -- one party made a proposal of terms orally, and

2109:38:54   then the counter party agreed to them, that would be an oral

2209:38:58   agreement, and there would be nothing exotic about that.

2309:39:00          But the contention here is that the parties agreed

2409:39:02   to some terms orally, we don't know which ones, but then

2509:39:07   manifested intent to agree to a whole set of other terms,

1 09:39:10    which also aren't specified in the Complaint, by unspecified

2 09:39:15    conduct.

3 09:39:15            THE COURT:  Tell me, Mr. Martinez, why this is

4 09:39:18    exotic.

5 09:39:20            Let's assume the parties have entered into an

6 09:39:24    agreement, written or oral, where there is at least the

7 09:39:29    fundamentals of the contract itself, so that it is an

8 09:39:34    enforceable contract, but they are light on details.

9 09:39:41    Doesn't -- isn't there an entire body of law that allows

10 09:39:45   courts to basically fill in the details, looking also, at

11 09:39:49   least in part, on the parties' conduct?

12 09:39:53           MR. MARTINEZ: In an ordinary case, that might be the

13 09:39:54   case, Your Honor, a general principle we might apply.

14 09:39:57           But what is exotic about this alleged agreement is

15 09:40:00   that it allegedly contained terms that entitled Mr. Scott to

16 09:40:05   a whole raft of rights in perpetuity with respect to the

17 09:40:10   *Muppet Babies* series.

18 09:40:13           Their allegation in paragraph 14 of the Complaint is

19 09:40:15   that Mr. Scott was entitled to a royalty in perpetuity, a

20 09:40:19   right of first refusal with respect to writing every future

21 09:40:23   episode of the *Muppet Babies* ever produced, and also a

22 09:40:26   perpetual screen credit.

23 09:40:29           THE COURT:  And so Mr. Martinez, do you understand

24 09:40:30   that aspect of this agreement to have been as part of the

25 09:40:36   oral agreement where the parties had an oral discussion, or

1 09:40:39   do you understand that to be subsequent conduct or details

2 09:40:44   that were later fleshed in -- fleshed out, I should say.

3 09:40:49          MR. MARTINEZ: The Complaint isn't clear.  It doesn't

4 09:40:51   specify which terms were oral and which were implied.

5 09:40:53          It appears, based on plaintiffs' characterization

6 09:40:56   here, and also in the briefing, and in paragraph 14 of the

7 09:40:59   Complaint, that the rights in perpetuity apparently were

8 09:41:04   implied by the conduct of the parties.

9 09:41:06          And as Your Honor knows from the handling of the

10 09:41:10   explicit -- Mr. Scott's explicitly implied claim, the *Desny*

11 09:41:15   misappropriation claim, in order to state a claim for an

12 09:41:16   implied contract or a partly implied contract, the plaintiff

13 09:41:19   has to plead and prove conduct by both parties manifesting

14 09:41:24   intent to be bound by the alleged terms of that implied

15 09:41:27   agreement.

16 09:41:28          If it's the -- it appears to be the case that their

17 09:41:32   contention is that Marvel manifested intent somehow to be --

18 09:41:37   to give Mr. Scott a series of rights in perpetuity.  And we

19 09:41:42   don't think plaintiff has stated anywhere near sufficient

20 09:41:45   facts to state that kind of a claim.

21 09:41:47          So I would just say, Your Honor, I understand from

22 09:41:49   the Court's tentative that the Court might be disinclined to

23 09:41:52   dismiss the case -- sorry, this claim with prejudice, but we

24 09:41:55   do think the serious ambiguity merits at the very least

25 09:42:00   dismissing the claim with leave to amend.  So that -- along

09:42:04  with all the other claims, which the Court is already

09:42:09  dismissing, so that plaintiffs can specify the nature of the

09:42:12  contract they are alleging, first of all.

09:42:14          And also, more importantly, specify which parts were

09:42:17  implied and which parts were allegedly oral.

09:42:20          THE COURT:  Can't you find that information out

09:42:22  readily in discovery?  And I realize that is not always an

09:42:27  answer, or shouldn't always be an answer to potential

09:42:30  ambiguity in a motion to dismiss, but what are we doing here?

09:42:34          MR. MARTINEZ: So, Your Honor, we -- to your point,

09:42:37  as you alluded to earlier, the plaintiff has an obligation to

09:42:40  state a claim before we commence discovery.  And our view is

09:42:45  they haven't stated a claim because there is not even a clear

09:42:48  articulation of what the alleged contract is or what it

09:42:51  consisted of.

09:42:52          THE COURT:  Would it make a difference to you if you

09:42:55  learned that I'm expecting this case to move on and there is

09:42:59  going to be discovery?

09:43:01          MR. MARTINEZ: Respectfully, Your Honor, Disney's

09:43:06  intention, since the Court is dismissing the other claims,

09:43:08  Disney's intention is to move on a second 12(b)(6) motion.

09:43:12          Obviously, we understand that discovery, in all

09:43:15  likelihood, is not going to be stayed for purposes of that

09:43:18  motion.  But it does seem to us that because they haven't

09:43:20  stated a claim on -- stated a claim, because the Court is

09:43:24  dismissing the other three, including an explicitly implied

09:43:28  contract claim on essentially the same ground, that plaintiff

09:43:31  needs to articulate the bases for their claim, it makes sense

09:43:34  to us to require plaintiff to plead this claim with

09:43:38  particularity.

09:43:39       THE COURT:  Unless you have something further with

09:43:42  regard to that point, let me hear your next point.

09:43:46       MR. MARTINEZ: The next point also relates to the

09:43:50  claim on the alleged 1980s contract.

09:43:52       And that point is that any rights in perpetuity to

09:43:56  which I referred earlier, that Mr. Scott may have enjoyed

09:43:59  under that alleged 1980s contract, were extinguished

09:44:04  prospectively by a 1990 agreement that Mr. Scott entered into

09:44:09  with Marvel several years later.

09:44:11       THE COURT:  And this is the 1990s Storyperson

09:44:15  Agreement?

09:44:15       MR. MARTINEZ: That's right.  And that is attached as

09:44:17  Exhibit C to the Myers' declaration.

09:44:19       THE COURT:  Even assuming, for purposes of this

09:44:20  discussion, that it's appropriate at this stage for me to

09:44:25  look at that agreement, explain to me how it accomplishes

09:44:29  what you claim it does.

09:44:31       MR. MARTINEZ: Yes, Your Honor.

09:44:33       THE COURT:  And you should be aware, Mr. Martinez,

09:44:34  that I have reviewed the agreement, I have reviewed the

1 09:44:37  integration clause, and it does appear to me, at least

2 09:44:42  arguably, that the subject matter of that agreement was two

3 09:44:51  scripts.

4 09:44:53       And if that is true, then how is it that the

5 09:44:56  integration clause worked in the way that you describe?

6 09:45:00       MR. MARTINEZ: So the principle, the legal principle,

7 09:45:04  Your Honor, at play under California law is that a second

8 09:45:09  contract between the same parties extinguishes any

9 09:45:13  inconsistent rights prospectively.  And so that is exactly

10 09:45:18  the situation we have here.  And I'll explain why I think the

11 09:45:24  1990 Person Agreement accomplishes that.

12 09:45:26       Mr. Scott alleges that he has a series of rights in

13 09:45:31  perpetuity under that alleged 1980s contract.  Regardless

14 09:45:34  whether those rights came from implied terms or oral terms,

15 09:45:37  the 1990 agreement extinguished those terms.  And that is

16 09:45:42  because that agreement, that 1990 agreement, provided for a

17 09:45:46  fixed, one-time set of benefits to be conferred on Mr. Scott.

18 09:45:49       It did not provide and did not mention any alleged

19 09:45:54  rights in perpetuity that Mr. Scott supposedly already

20 09:45:58  enjoyed under his 1980s contract with Marvel.

21 09:46:02       And so our contention isn't that -- I think there

22 09:46:05  was a lot of ink spilled in plaintiffs' opposition about

23 09:46:08  whether the 1990 agreement like applies to Mr. Scott's

24 09:46:15  scripts that he wrote in the 1980s, or his rights with

25 09:46:18  respect to those scripts.  That is missing the point.

09:46:21    The point is that there is a second contract between
09:46:24 the exact same parties, or -- well, there is a contract --
09:46:29 whether it was the second -- assuming it's true that there
09:46:31 was a 1980s one, there is a second contract between the same
09:46:35 parties, and it's -- and the rights contained in that second
09:46:39 agreement are inconsistent with the rights that Mr. Scott
09:46:42 alleges he enjoyed under the prior one.

09:46:44    THE COURT:  Are they inconsistent to the extent that
09:46:48 you are suggesting, Mr. Martinez?  To spell out the question:
09:46:55 Arguably, it is inconsistent to say that with respect to
09:46:59 these two scripts, that Mr. Scott preserved all of the rights
09:47:06 that he claims he received orally, again, with regard to
09:47:11 these two scripts.

09:47:13    But if the focus is only on these two scripts, then
09:47:17 why would it extinguish other rights that don't apply to
09:47:22 those two scripts?

09:47:24    So let me make sure that I understand your argument,
09:47:26 and let me spell it out even further.  There are 80 prior
09:47:31 scripts, whatever the number is, that he worked on.  He
09:47:34 claims that he has a copyright, intellectual property rights
09:47:40 on that, he has in perpetuity rights on all of those, and
09:47:44 including on scripts that he prepares in the future.

09:47:48    And so now in 1990, he has -- enters into an
09:47:54 agreement with two scripts where he should be able to rely
09:47:57 upon that prior agreement, other than perhaps to make some

09:48:03 1  adjustments with costs for the scripts or the like, but he

09:48:07 2  should be able to rely upon that agreement because that is

09:48:09 3  what he agreed to; and yet, he didn't.  He arguably limited

09:48:13 4  his rights with regard to these two scripts.

09:48:16 5          Does that mean he also cut off the rights with

09:48:19 6  regard to all of the previously-written scripts?

09:48:21 7          MR. MARTINEZ: It does, Your Honor, because it's a

09:48:24 8  second agreement concerning -- the alleged 1980s agreement

09:48:30 9  apparently concerned -- governed Mr. Scott's rights with

09:48:33 10 respect to future episodes of the *Muppet Babies*.

09:48:36 11         The second contract, the 1990s Storyperson

09:48:40 12 Agreement, did exactly the same thing.  It set out terms for

09:48:42 13 Mr. Scott's future work on episodes of the *Muppet Babies*.

09:48:45 14         So it's important not just to look at what the 1990

09:48:48 15 Person Agreement says.  Obviously, it says -- it provides, We

09:48:51 16 are going to give you a fixed fee for your work with respect

09:48:54 17 to these two episodes.  But also what it doesn't say.  It

09:48:57 18 doesn't preserve some alleged right in perpetuity to write

09:49:02 19 all future episodes, or to receive a royalty, or to receive a

09:49:05 20 screen credit.

09:49:07 21         And in that sense, the two are, the two agreements,

09:49:09 22 the second agreement and the alleged first agreement, are

09:49:12 23 inconsistent.

09:49:13 24         THE COURT:  I'll ask you this last question, and

09:49:15 25 then let's move on to another point, because I think I

09:49:19  understand.

09:49:20         What I think I hear you to be saying is not so

09:49:24  much -- you wouldn't put it this way -- not so much that

09:49:30  they're fundamentally inconsistent to the point where the

09:49:34  integration clause necessarily snuffs out the prior

09:49:38  agreement, but they are sufficiently inconsistent that it

09:49:40  raises serious doubt about the purported oral agreement.

09:49:47         Disney claims there was no such oral agreement, this

09:49:49  is all fantasyland, right?

09:49:52         MR. MARTINEZ: It is our contention that there was no

09:49:55  such oral agreement.  That's correct, Your Honor.

09:49:56         I don't know if I would -- obviously, it is our

09:50:01  position that the 1990 agreement does more than create

09:50:03  serious doubt.  It does snuff out the agreement -- the

09:50:06  alleged 1980s agreement.

09:50:08         THE COURT:  But the point is that the 1990 agreement

09:50:13  casts serious doubt on the credibility of the purported oral

09:50:18  agreement.

09:50:19         That is Disney's position, at least as a backup,

09:50:24  correct?

09:50:24         MR. MARTINEZ: At least as a backup, Your Honor.

09:50:26         THE COURT:  All right.  Move on to the next.  I'm

09:50:28  not sure that it at this point provides you with more than

09:50:32  that.

09:50:32         But as I said previously, Mr. Martinez, my overall

09:50:35  impression is, while I respect your client's right to file a

09:50:40  700-page with all kinds of extrinsic evidence motion to

09:50:44  dismiss, this motion strikes me as being ambitious.

09:50:48       MR. MARTINEZ: I understand, Your Honor.  I'll move

09:50:50  on to my third and final point.

09:50:51       And that concerns the tentative ruling on the

09:50:54  protectability of Mr. Scott's alleged contributions to the

09:50:58  series.  That is on pages 7 and 8 of the tentative, I

09:51:01  believe.

09:51:01       I would like to focus on a prong or a principle of

09:51:05  the protectability analysis that doesn't appear to be

09:51:08  addressed in the tentative, but that we think is very

09:51:11  important.

09:51:11       And that is the principle that in order to be

09:51:14  copyrightable, the original aspects of a derivative work must

09:51:18  not in any way affect the scope of any copyrighted protection

09:51:22  in the underlying preexisting material from which the

09:51:27  derivative work is derived.

09:51:29       So in other words, the author of an allegedly

09:51:33  authorized derivative work can't assert a copyright over

09:51:37  the -- you know, the allegedly original material in the

09:51:39  derivative work that would impinge upon or abridge a prior

09:51:46  party's preexisting copyright in the original underlying

09:51:48  work.

09:51:49       Your Honor cites that principle on, I think on page

1   09:51:51    8 of the tentative.  But what I -- the reason I raise it here

2   09:51:59    is because the preexisting material here obviously is the

3   09:52:04    Muppets as characters, and that includes the Muppets as

4   09:52:08    babies, as featured in *The Muppets Take Manhattan*.

5   09:52:11         So the scope of any copyright that Mr. Scott or the

6   09:52:13    Trustee are asserting here, cannot infringe or abridge or

7   09:52:18    impinge upon the scope of Disney's preexisting copyright in

8   09:52:22    the Muppets characters, including the Muppets as babies.

9   09:52:27         THE COURT:  I know you are going to get there, but

10  09:52:28    maybe you can get there right away:  How does it do so here?

11  09:52:32         MR. MARTINEZ: So if Mr. Scott's contention is that

12  09:52:34    he owns the copyright to the *Muppet Babies* series, which is

13  09:52:43    the basis of his -- of the -- of plaintiffs' copyright

14  09:52:47    claims, that would -- that would essentially eviscerate

15  09:52:50    Disney's copyright in the Muppets, and also in the Muppets as

16  09:52:55    babies, because it would -- Disney couldn't exploit the

17  09:53:01    Muppets, or the Muppets as babies, if Mr. Scott owned a

18  09:53:05    copyright to the *Muppet Babies* series, which is the basis of

19  09:53:08    his claim.

20  09:53:09         So that can't be right.  That runs headlong into the

21  09:53:13    *U.S. Auto Parts Network* principle that I just quoted, and

22  09:53:17    that Your Honor cites in the tentative.

23  09:53:19         I appreciate that the Court is going to dismiss the

24  09:53:21    copyright claims on substantial similarity grounds.  The

25  09:53:24    reason I bring this principle to light, and want to emphasize

09:53:27  1  it for the Court, is because it's relevant to defining the
09:53:31  2  scope of the copyright that we are litigating in this case.
09:53:34  3          Even if you -- even if you conclude that that
09:53:37  4  principle doesn't defeat the copyright claims all together,
09:53:41  5  it at the very least narrows the scope of the alleged
09:53:44  6  copyrights that Mr. Scott is entitled to.
09:53:47  7          And that is going to be very important to a future
09:53:50  8  filtration analysis that the Court will have to undertake as
09:53:54  9  part of a substantial similarity analysis.
09:53:57  10         And then because you are going to only -- as part of
09:54:00  11  a substantial similarity analysis, the Court's only going to
09:54:03  12  be comparing the protectable, original parts of Mr. Scott's
09:54:06  13  alleged contributions to the allegedly infringing work.
09:54:09  14         So my only final point on this is I think the
09:54:14  15  tentative suggests that the original -- or the protectability
09:54:18  16  analysis is something that needs to be reserved for summary
09:54:21  17  judgment or for trial.  The substantial -- the filtration and
09:54:26  18  substantial similarity analyses, which sort of subsume the
09:54:29  19  protectability analysis, are something that the Court can
09:54:32  20  resolve on a 12(b)(6) motion.
09:54:34  21         And, you know, I think Disney will ask the Court to
09:54:38  22  conduct that analysis in its next 12(b)(6) motion.
09:54:42  23         THE COURT:  And so tell me what that would look like
09:54:44  24  in the Court's order.  How would that change the Court's
09:54:47  25  order?

1 09:54:47        MR. MARTINEZ: So with respect to -- so like I guess
2 09:54:53   it would change it in two immediate ways:
3 09:54:55        The first is that the Court would -- and I'm
4 09:54:59   referring to sort of the middle paragraph on page 8, that
5 09:55:02   would be I think where the change might take place -- but the
6 09:55:05   change would be to winnow down the scope of the alleged
7 09:55:10   copyright that Mr. Scott could possibly be entitled to as a
8 09:55:13   matter of law, to exclude anything that would undercut or
9 09:55:19   impinge upon Disney's preexisting copyright in the Muppet
10 09:55:23   characters, and in the Muppets as babies.
11 09:55:26        It's sort of unclear, to be frank, Your Honor, what
12 09:55:30   Mr. Scott would have left.  I know Your Honor in the
13 09:55:34   tentative refers to *The Nanny* character.  Assuming, just for
14 09:55:37   purposes of this motion, that it's true that Mr. Scott
15 09:55:41   invented *The Nanny* character, perhaps that would be left
16 09:55:44   over.
17 09:55:46        But anything else, the Muppet characters, the
18 09:55:50   Muppets as babies, Mr. Scott can't possibly claim copyright
19 09:55:54   to those, because that would infringe upon -- or, sorry --
20 09:55:59   impinge upon and abridge Disney's prior preexisting copyright
21 09:56:04   in those characters.
22 09:56:04        THE COURT:  So if I were to adopt what you are
23 09:56:06   suggesting, it would be fairly nebulous as to its
24 09:56:10   implication?
25 09:56:13        MR. MARTINEZ: No.  I think the principle is worth

09:56:16  explicating in the tentative, because it's going to inform

09:56:20  how the Court conducts its next substantial similarity

09:56:23  analysis and filtration analysis, regardless whether that

09:56:27  happens in a second 12(b)(6) motion or at summary judgment.

09:56:30       THE COURT:  But this Court has done a substantial

09:56:32  similarity analysis without giving guidance, and simply made

09:56:36  a determination in the context of the information presented

09:56:40  to it what aspects are protected and what aspects are not

09:56:44  protected.

09:56:45       So why wouldn't I just do that in the context of a

09:56:49  substantial similarity analysis?

09:56:50       MR. MARTINEZ: I think you would in a future

09:56:52  12(b)(6).  I just think that the principle, although cited in

09:56:55  the tentative -- and I don't mean to make light of Your

09:56:59  Honor's tentative -- the principle is cited, but there is

09:57:03  no -- the Court I fear hasn't addressed this very important

09:57:07  limitation on the scope of any copyright to which Mr. Scott

09:57:11  could possibly be entitled in this case.

09:57:13       THE COURT:  Let me hear from Mr. Rothschild on that

09:57:16  point.

09:57:16       MR. ROTHSCHILD: Your Honor, *Muppets Take Manhattan*,

09:57:20  which is the source of the *Muppet Babies*, contained, I think

09:57:24  it was a three and-a-half minute segment with the *Muppet*

09:57:29  *Babies*.

09:57:29       Mr. Scott wrote, what, 50, 60 hours of episodes and

09:57:36   scripts.  There was a lot more in those 50 or 60 hours, it

09:57:40   may be more, than are in those three and a half minutes.

09:57:44   This isn't just somebody making a new Batmobile that looked

09:57:50   exactly like the old one.

09:57:51           So I guess my point really is it's not a motion to

09:57:55   dismiss issue.  You know, whether -- anything that would

09:58:00   impinge on Disney's copyright is a nebulous concept.  It's

09:58:08   not a 12(b)(6) issue.  It's maybe a summary judgment issue,

09:58:12   maybe a trial issue.

09:58:13           You know, I'm hopeful that we can litigate the case

09:58:16   sufficiently that we can't have -- that we don't have motions

09:58:19   that aren't necessary or that are premature.  And I think

09:58:24   this is that kind of issue.

09:58:26           THE COURT:  Anything further, Mr. Rothschild?

09:58:28           MR. ROTHSCHILD:  No.

09:58:29           THE COURT:  Nothing further?

09:58:33           MR. ROTHSCHILD:  I guess -- I don't know if it's

09:58:39   necessary, but on this 1990 agreement, again, questions of

09:58:43   fact:  What happened when the people entered into that

09:58:47   agreement?  What was their understanding?  How did they

09:58:49   manifest that understanding?  Not 12(b)(6) issues.  These are

09:58:54   all factual issues that Disney has some documents that they

09:58:59   are going to produce, I hope, in the next couple of weeks.

09:59:04   We'll engage in all of the discovery we need, and they will,

09:59:08   too, and we can develop these issues and litigate them in an

1 09:59:12   efficient and comprehensive manner.

2 09:59:15          THE COURT:  Mr. Martinez, I'll give you two more

3 09:59:17   minutes to give you the last word, and then I'm going to

4 09:59:19   conclude this matter.

5 09:59:20          MR. MARTINEZ: Okay.  Your Honor, I think that is --

6 09:59:23   just one last point on this protectability point.  Just that

7 09:59:26   I do think it's clear under the *Benay* case, and other cases

8 09:59:29   we have cited in our opening brief, that the filtration

9 09:59:32   analysis of anything not protectable, and then the

10 09:59:35   substantial similarity analysis, are inquiries the Court can

11 09:59:39   undertake on a Rule 12(b)(6) motion.

12 09:59:41          That would just be -- again, not to line it -- I

13 09:59:44   think that would be the second change to the tentative, which

14 09:59:47   suggests that that issue is really reserved for later phases

15 09:59:50   of the case.

16 09:59:50          THE COURT:  I have done it before, Mr. Martinez.  I

17 09:59:54   don't intend to do so in this case.

18 09:59:57          Anything further?

19 09:59:57          MR. MARTINEZ: Nothing further on the merits, Your

20 10:00:00   Honor.

21 10:00:00          THE COURT:  All right.  I will take the matter under

22 10:00:03   submission and consider the parties's arguments, and you will

23 10:00:07   receive the Court's ruling in due course.  We are in recess.

24 10:00:17   This matter is concluded.  Thank you.

25                        *****     *****     *****

1

2     I certify that the foregoing is a correct transcript from the

3     record of proceedings in the above-titled matter.

4

5

6

7     ---------------------------

8

9     Amy C. Diaz, RPR, CRR            July 20, 2022

10    S/  Amy Diaz

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25