ERIN J. COX (State Bar No. 267954)
Erin.Cox@mto.com
BRANDON E. MARTINEZ (State Bar No. 318749)
Brandon.Martinez@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendant The Walt Disney Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| HOWARD M. EHRENBERG, Chapter 7 Trustee; JEFFREY SCOTT, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>THE WALT DISNEY COMPANY,<br><br>Defendant. | Case No. 2:22-CV-01136-SB-SK<br><br>**REPLY IN SUPPORT OF DEFENDANT THE WALT DISNEY COMPANY'S MOTION TO DISMISS COUNTS ONE THROUGH FOUR, SIX, AND SEVEN OF PLAINTIFFS' SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**<br><br>**[Reply in Support of Request for Judicial Notice filed concurrently herewith]**<br><br>**Judge:** Hon. Stanley Blumenfeld, Jr.<br><br>**Date:** September 16, 2022<br>**Time:** 8:30 A.M.<br>**Place:** Courtroom 6C<br><br>**Action Filing Date:** February 18, 2022 |

REPLY IN SUPPORT OF DEFENDANT THE WALT DISNEY COMPANY'S MOT. TO DISMISS

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................. 1

II. Plaintiffs' Copyright, Implied-Contract, and Fraud Claims Fail. ............................ 2

    A. Plaintiffs Have Yet Again Failed to Plead Substantial Similarity Between the Protectable Elements of Scott's Alleged Works and the *Muppet Babies* Reboot. ................................................................................ 2

        1. Plaintiffs Fail to Engage in the Required Filtration of Unprotectable Elements. ................................................................ 2

        2. The *Muppet Babies* Reboot Bears No Substantial Similarity to the Protectable Elements of the 1980s Show Bible or Scripts. ............ 5

    B. Scott's Revised Breach of Implied-Contract Claim Fails. ............................. 7

        1. Scott's Submission of Alleged Ideas for Consideration as a Screenwriter Does Not Support an Implied Contract. ........................ 7

        2. Scott Does Not Dispute That the *Muppet Babies* Reboot Lacks Any Substantial Similarity to His 2016 Pitch. ................................... 9

        3. Scott's Implied-Contract Claim Is Time-Barred. ............................... 10

    C. Scott Still Has Failed to Plead a Viable Fraud Claim with Particularity. .................................................................................... 11

III. CONCLUSION ............................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*4Bowl, LLC v. AMF Bowling Worldwide, Inc.*,
    2012 WL 13008127 (C.D. Cal. Aug. 10, 2012) ...................................................... 8

*Alfred v. Walt Disney Co.*,
    821 F. App'x 727 (9th Cir. 2020) ............................................................... 3, 4

*Aliotti v. R. Dakin & Co.*,
    831 F.2d 898 (9th Cir. 1987) ...................................................................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................ 3

*Benay v. Warner Bros. Entertainment*,
    607 F.3d 620 (9th Cir. 2010) .................................................................... 10

*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002) ...................................................................... 5

*DuMond v. Reilly*,
    2021 WL 733311 (C.D. Cal. Jan. 14, 2021) ..................................................... 4

*Esplanade Productions, Inc. v. Walt Disney Co.*,
    768 F. App'x 732 (9th Cir. 2019) ................................................................ 3

*Funky Films, Inc. v. Time Warner Entertainment Co.*,
    462 F.3d 1072 (9th Cir. 2006) .................................................................... 2

*Green v. Harbach*,
    2018 WL 3350329 (S.D.N.Y. July 9, 2018) ..................................................... 6

*Hsu v. OZ Optics Ltd.*,
    211 F.R.D. 615 (N.D. Cal. 2002) ............................................................... 12

*Lyons v. Michael & Associates*,
    824 F.3d 1169 (9th Cir. 2016) .................................................................. 11

*Masterson v. Walt Disney Co.*,
    821 F. App'x 779 (9th Cir. 2020) ......................................................... 3, 5, 6

**TABLE OF AUTHORITIES**
**(Continued)**

Page

*Mattel, Inc. v. MGA Entertainment, Inc.*,
   616 F.3d 904 (9th Cir. 2010) ...................................................................................2

*McDonald v. K-2 Industries, Inc.*,
   108 F. Supp. 3d 135 (W.D.N.Y. 2015) .....................................................................6

*Milkcrate Athletics, Inc. v. Adidas America, Inc.*,
   __ F. Supp. 3d __, 2022 WL 3584501 (C.D. Cal. Aug. 4, 2022) .............................4

*Munoz v. U.S. Department of State*,
   2017 WL 8230036 (C.D. Cal. Dec. 11, 2017) .........................................................7

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) .................................................................................2

*Schkeiban v. Cameron*,
   566 F. App'x 616 (9th Cir. 2014) ............................................................................4

*Skidmore v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) .......................................................................2, 5, 10

*Stichting Pensioenfonds ABP v. Countrywide Financial Corp.*,
   802 F. Supp. 2d 1125 (C.D. Cal. 2011) ...................................................................7

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) .................................................................12

*White v. Twentieth Century Fox Corp.*,
   572 F. App'x 475 (9th Cir. 2014) ............................................................................4

*Wild v. NBC Universal*,
   513 F. App'x 640 (9th Cir. 2013) ............................................................................4

**STATE CASES**

*Desny v. Wilder*,
   46 Cal. 2d 715 (1956) ............................................................................................10

*Faris v. Enberg*,
   97 Cal. App. 3d 309 (1979) .....................................................................................9

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Gunther-Wahl Productions, Inc. v. Mattel, Inc.*,
    104 Cal. App. 4th 27 (2002) .................................................................................9

*Spinner v. American Broadcasting Cos.*,
    215 Cal. App. 4th 172 (2013) ...............................................................................10

*Thompson v. California Brewing Co.*,
    191 Cal. App. 2d 506 (1961) ..........................................................................10, 11

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) .............................................................................................3, 4

**TREATISES**

4 Nimmer on Copyright § 19D.07[D] .........................................................................10

-iv-
REPLY IN SUPPORT OF DEFENDANT THE WALT DISNEY COMPANY'S MOT. TO DISMISS

## I. INTRODUCTION

Plaintiffs' opposition largely relies on legally untenable positions and mistaken readings of case law to ward off dismissal of their copyright, implied-contract, and fraud claims—confirming that these claims should be dismissed with prejudice from Plaintiffs' Second Amended Complaint ("SAC").

The Court previously held that Plaintiffs' First Amended Complaint failed to plausibly allege substantial similarity between Disney's 2018 *Muppet Babies* reboot and Plaintiff Jeffrey Scott's production bible or scripts from the original 1980s *Muppet Babies* series, explaining that Plaintiffs failed to "identify in a nonconclusory manner any specific use by Disney of protected elements of Scott's works." (Dkt. 45 ("Prior MTD Ruling") at 8.) Yet, in response to Disney's explanation of how the purported similarities Plaintiffs have now asserted between each of the works were premised on either Jim Henson's Muppets characters that Plaintiffs do not own, unprotectable *scenes-a-faire* that no one owns, or were impermissibly cobbled together from multiple different scripts to manufacture the semblance of substantial similarity, Plaintiffs insist that they were assured the Court would not engage in any filtration analysis to test the sufficiency of their allegations. But a finding of substantial similarity can only be premised on protected expression, and Plaintiffs' alleged similarities do not clear that hurdle.

In defending against dismissal of Scott's claim for breach of an implied contract purportedly formed in 2016 when Scott pitched ideas for a *Muppet Babies* reboot, Plaintiffs do not dispute that Scott was sharing ideas in order to be considered for a spot as a screenwriter. Instead, they argue that future employment can serve as the consideration for an implied contract under which Scott disclosed his reboot ideas—a position that runs headlong into controlling precedent. Their attempt to avoid the statute of limitations on this claim fares no better: There is no "discovery rule" for implied contract/*Desny* claims, and their citation to cases dealing with federal statutory claims does not suggest otherwise.

Finally, Plaintiffs now argue that Scott's promissory fraud claim is actually based

-1-
REPLY IN SUPPORT OF DEFENDANT THE WALT DISNEY COMPANY'S MOT. TO DISMISS

on an express misrepresentation—citing language in an email suggestive of Scott being considered as a potential writer on the *Muppet Babies* reboot—but Scott has failed to plausibly allege that such a statement was false. Scott does not allege that Disney executives guaranteed that he would be brought on as a screenwriter, and the mere fact that he was not hired does not mean he was not considered for the role. Scott's fraud claim thus fails as a matter of law.

## II. Plaintiffs' Copyright, Implied-Contract, and Fraud Claims Fail.

### A. Plaintiffs Have Yet Again Failed to Plead Substantial Similarity Between the Protectable Elements of Scott's Alleged Works and the *Muppet Babies* Reboot.

#### 1. Plaintiffs Fail to Engage in the Required Filtration of Unprotectable Elements.

Plaintiffs' leading argument in defending against dismissal of their copyright claims is their understanding that the Court would not conduct a filtration analysis on the alleged similarities Plaintiffs included in their Second Amended Complaint. (Opp. 1-3; *see also id.* at 7 ("Disney's argument on characters is essentially that the Court should filter out non-protectable elements—an analysis that is premature and that this Court has already stated it will not engage in at this stage.").) To assess substantial similarity as a matter of law, the Court must apply the objective "extrinsic test." *Funky Films, Inc. v. Time Warner Ent. Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1065-69 (9th Cir. 2020). "The extrinsic test assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018), *overruled on other grounds by Skidmore*, 952 F.3d at 1065-69. And "*[b]efore that comparison can be made*, the court must 'filter out' the unprotectable elements of the plaintiff's work—primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject)." *Id.* (emphasis added); *see also Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 916 (9th Cir. 2010) (holding that the "district court [erred] in failing to filter out all the unprotectable elements" from allegedly copyrighted work

because "a finding of substantial similarity between two works can't be based on similarities in unprotectable elements"). The opportunity this Court conferred on Plaintiffs to amend their complaint to satisfy fundamental pleading standards was not a grant of immunity from any judicial evaluation of the sufficiency of their allegations regarding substantial similarity.

Plaintiffs also punt on conducting a filtration analysis by contending that "a substantial similarity determination of what elements are protectable should be deferred until after discovery, including expert discovery," (Opp. 4), but they offer no support for the suggestion that expert testimony is necessary here beyond citation to *Alfred v. Walt Disney Co.*, 821 F. App'x 727, 729 (9th Cir. July 22, 2020). Plaintiffs overlook another decision issued by the Ninth Circuit after *Alfred*—*Masterson v. Walt Disney Co.*, 821 F. App'x 779 (9th Cir. Aug. 3, 2020)—which explained that although "there will be times" when "expert testimony could be helpful," "there will also be times where the court's 'judicial experience and common sense' shows that the claims are not plausible and that a comparison of two works creates no more than a 'mere possibility of misconduct.'" 821 F. App'x at 781 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In *Masterson,* the Ninth Circuit affirmed the dismissal of a claim alleging copyright infringement by the film *Inside Out* on a Rule 12(b)(6) motion after concluding that "[a]ll of the asserted similarities must be filtered out." *Id.* at 782. Similarly, in *Esplanade Productions, Inc. v. Walt Disney Co.*, 768 F. App'x 732 (9th Cir. 2019), the Ninth Circuit noted that "[n]o discovery or expert testimony could show how the works are similar, so the claim is not plausible, and dismissal of the [plaintiff's] movie copyright claim was appropriate" on a motion to dismiss. 768 F. App'x at 734. By contrast, in *Alfred,* the filtration analysis was complicated by a unique dynamic not at issue here: many of the commonalities between the works were "unprotected generic, pirate-movie tropes," but the Ninth Circuit found that the allegedly infringing "blockbuster *Pirates of the Caribbean* film franchise [which was twenty years old at the time of the suit] may itself have shaped what are now

considered pirate-movie tropes." *Alfred*, 821 F. App'x at 729.  There is no complexity potentially meriting expert opinion of that sort here.

The Ninth Circuit has repeatedly affirmed dismissals at the pleading stage for lack of substantial similarity,[1] and district courts continue to apply judicial experience and common sense in conducting filtration analyses at the pleadings stage without the need for expert testimony.  *See, e.g.*, *Milkcrate Athletics, Inc. v. Adidas Am., Inc.*, __ F. Supp. 3d __, 2022 WL 3584501, at *7 (C.D. Cal. Aug. 4, 2022) (dismissing copyright-infringement claim on Rule 12(b)(6) motion without expert testimony); *DuMond v. Reilly*, 2021 WL 733311, at *5 (C.D. Cal. Jan. 14, 2021) (same).  This Court can and should do so here.

Plaintiffs do not offer any cogent explanation for why expert testimony is necessary to conduct a filtration analysis in this case.  In one attempt at justifying expert testimony, Plaintiffs state that "while Disney is correct that guards in castles are standard fare, it cites no . . . work in which a conceited baby pig tells them what to do." (Opp. 6.) "That juxtaposition," Plaintiffs say, "which Scott created, was unprecedented . . . ." (*Id.*) The "conceited baby pig" Plaintiffs reference is Miss Piggy—a quintessential Muppet character that Scott did not create, that Plaintiffs do not own, and whose infant version was first portrayed in *The Muppets Take Manhattan*, well before Scott prepared his bible and scripts (*see* RJN, Ex. A-1 at 50:51–54:36).  And, in any event, the SAC alleges that a

---

[1] *See, e.g., Schkeiban v. Cameron*, 566 F. App'x 616, 617 (9th Cir. 2014) (holding district court "correctly ruled" that plaintiff's book and screenplay and defendant's movie were "not substantially similar in their protected elements" on a Rule 12(b)(6) motion (internal quotation marks omitted)); *White v. Twentieth Century Fox Corp.*, 572 F. App'x 475, 476-77 (9th Cir. 2014) (affirming substantial similarity determination on Rule 12(b)(6) motion: "First, most of the alleged similarities are not protectable similarities. . . . Second, there are significant differences between [plaintiff's] screenplay and defendants' allegedly-infringing works."); *Wild v. NBC Universal*, 513 F. App'x 640, 642 (9th Cir. 2013) (affirming dismissal without leave to amend for lack of substantial similarity between novel and allegedly infringing television series).

reboot episode showed a *different* character named "Jill the Frog" as a queen in a castle, *not* Miss Piggy. (SAC ¶ 38.)

Similarly, Plaintiffs' argument that a filtration analysis cannot strip out Scott's alleged idea of "fantasies springing from comic books" or "characters creating fully immersive fantasies . . . from everyday items" because there is not a case specifically addressing this manifestation of a generic or *scene-a-faire* element in works for children (Opp. 9) is nonsensical. In *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002), the Ninth Circuit rejected the plaintiff's argument that two works' common theme of "employing magical adventures to teach children to overcome their fears and to try new things" demonstrated substantial similarity. 297 F.3d at 828. *Cavalier* explained that "[t]he themes of teaching children to have confidence, to overcome their fears, and to try are not only too general to be protected but are also standard topics in children's literature." *Id.*

### 2. The *Muppet Babies* Reboot Bears No Substantial Similarity to the Protectable Elements of the 1980s Show Bible or Scripts.

Plaintiffs do not dispute that they do not own the copyrights to the Muppets characters or the Muppets characters as babies—those are owned by Disney. Plaintiffs also concede that certain of their cited similarities are "standard fare," (Opp. 6), but sweepingly contend that "Scott's selection, arrangement and coordination" of elements protect their allegations of substantial similarity from dismissal. (*See, e.g., id.* at 6, 8-9.) Plaintiffs even cite *Alfred* for the proposition that the Court must "compare the original selection and arrangement of unprotectible elements between the two works," (*id.* at 4), a tacit concession that the purported similarities between these works are not protectable. However, as the Ninth Circuit "explained in *Skidmore*, for a combination of unprotectable elements to sustain a claim of substantial similarity, an author must have created a new arrangement of unprotectable elements and the allegedly infringing work must share substantial amounts of that same combination." *Masterson,* 821 F. App'x at 782. In *Masterson,* the Ninth Circuit evaluated the combination of the unprotectable elements of the plaintiff's book and determined that the similarities between the book and

the allegedly infringing movie were "more like random similarities scattered throughout the works, of which this court has been particularly cautious," and thus determined that the plaintiff had "failed to plausibly allege substantial similarity." *Id.* (internal quotation marks omitted).

Plaintiffs do not articulate the specific "arrangement, coordination and selection" of unprotectable elements (Opp. 6) that they contend could sustain a claim of substantial similarity here. For instance, in arguing that "Scott's selection, arrangement and coordination of 'ordinary words' [is] protected," Plaintiffs point to a single word—"Renoir"—which is said by the Muppet character Animal when looking at a work by the artist Renoir. (*Id.* at 8.) This is, to put it mildly, not an instance in which "the allegedly infringing work . . . share[s] substantial amounts of that same combination" of elements supposedly arranged by the plaintiff. *Masterson,* 821 F. App'x at 782.

The only bona fide selection and arrangement of elements here was conducted by Plaintiffs in crafting the Second Amended Complaint, mixing and matching details from different characters from numerous different scripts to craft an impression of similarity. This sleight of hand fails to sustain a claim of infringement of any one of Scott's works when taken as a whole: cobbling together random similarities from numerous works does not show a substantial similarity with any single one of those works standing alone. But it also unravels Plaintiffs' arguments premised on Scott's purported arrangement, selection, and coordination of unprotectable elements within each of his scripts. The courts that have confronted similar machinations—both mixing-and-matching and aggregation of elements by plaintiffs—have dismissed such allegations as inadequate to plausibly allege substantial similarity. *Green v. Harbach*, 2018 WL 3350329, at *6 (S.D.N.Y. July 9, 2018) (rejecting claim of substantial similarity where plaintiff "mixe[d] and matche[d] characters and plot lines" to support his copyright claim), *aff'd*, 750 F. App'x 57 (2d Cir. 2019); *McDonald v. K-2 Indus., Inc.*, 108 F. Supp. 3d 135, 143 (W.D.N.Y. 2015) ("Plaintiff presents no authoritative case law supporting her theory that such allegations of aggregated copyright infringement are cognizable."). Plaintiffs make

no attempt to distinguish these cases, other than to note that they are not from the Ninth Circuit. However, the soundness of their logic holds regardless of the jurisdiction.

* * *

In relying so heavily on the prospect of evading a filtration analysis, and their talismanic invocation of "selection, arrangement and coordination" of unprotectable elements aggregated from numerous of Scott's scripts, Plaintiffs have failed to address many of the arguments raised in Disney's moving papers. Their failure to respond to these arguments constitutes their waiver. *See Munoz v. U.S. Dep't of State*, 2017 WL 8230036, at *3 (C.D. Cal. Dec. 11, 2017) ("In their Opposition, Plaintiffs do not address Defendants' argument and, thus, have waived the issue."); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."). Plaintiffs have failed to plausibly allege substantial similarity, and thus their copyright claims must be dismissed with prejudice.

### B. Scott's Revised Breach of Implied-Contract Claim Fails.

#### 1. Scott's Submission of Alleged Ideas for Consideration as a Screenwriter Does Not Support an Implied Contract.

Scott does not dispute that he submitted his ideas for a *Muppet Babies* reboot to be considered for the position of a screenwriter on that project (Mot. 12-14), a concession that dooms the allegation he and Disney entered into an implied contract to compensate Scott for the initial sharing of his ideas. As the Ninth Circuit explained in *Aliotti v. R. Dakin & Co.*, 831 F.2d 898 (9th Cir. 1987), "no contract may be implied where an idea has been disclosed . . . for the sole purpose of inducing the defendant to enter a future business relationship." *Id.* at 902. Scott leans into the notion that employment as a screenwriter could serve as compensation for the initial sharing of his ideas for the reboot and ignores *Aliotti*'s clear statement of contrary law to assert that, "[i]n fact, 'business

relationships' do qualify as compensation in idea misappropriation cases." (Opp. 11.) Scott's mistaken read of the case law cannot salvage his implied-contract claim.[2]

Scott characterizes *4Bowl, LLC v. AMF Bowling Worldwide, Inc.*, 2012 WL 13008127, at *5-6 (C.D. Cal. Aug. 10, 2012), as holding—in apparent contravention of the Ninth Circuit's decision in *Aliotti*—"that a business relationship can be 'compensation' for purposes of idea misappropriation." (Opp. 11.) But in doing so, Scott mistakes the *4Bowl* court's discussion of alternative methods of financial compensation for the initial sharing of ideas, which can support a *Desny* claim, with the prospect of a future business or employment relationship curried through the idea sharing, which cannot. In *4Bowl,* the court rejected the notion that the only type of compensation that would support a *Desny* claim was to "literally cut [the offeror] a check" and allowed for the possibility that the offeror could be compensated for the service of sharing the ideas through other financial arrangements, "such as a profit-sharing arrangement or some other compensation structure." *4Bowl*, 2012 WL 13008127, at *5. The court in *4Bowl* confirmed, however, that an implied-contract claim would not be viable if the plaintiff had submitted its idea to the defendant for the sole purpose of entering into a business relationship. *Id.* at *6. In discussing *Aliotti*, the *4Bowl* court noted that the Ninth Circuit held that no implied contract was formed because the plaintiff "pitched her designs to persuade the defendant to purchase her company or to hire her" and "disclosed her ideas to demonstrate to the defendant her potential or the potential of her company." *4Bowl*, 2012 WL 13008127, at *5. The court in *4Bowl* thus framed *Aliotti* as holding that ideas pitched to induce a prospective future employer to hire the plaintiff do not support an idea-theft claim. *See also id.* (discussing

---

[2] *Aliotti* did not, as Scott suggests, draw a distinction between the prospect of a "future business relationship"—which would preclude the formation of an implied contract to receive compensation for the mere sharing of ideas in the first place—and the prospect of future employment. (Opp. 11 (arguing that "the court in *Aliotti* did not disqualify potential employment as 'compensation' for an idea").)

*Faris v. Enberg*, 97 Cal. App. 3d 309, 318 (1979), in which, because plaintiff shared idea to have defendant "serve as an employee or perhaps a production partner, no implied-in-fact contract was formed").

In addition to misunderstanding the law, Scott continues to take an implausible leap from an alleged statement that Disney does not "accept unsolicited submissions," (SAC ¶ 92), inferring that Disney necessarily assumes an obligation to pay for the mere submission of ideas it allegedly has solicited. But Scott's own allegations demonstrate that, in his past dealings with Disney, Scott was paid to write screenplays for Disney only "subsequent[]" to having submitted ideas for them, (SAC ¶ 92), not that he was ever compensated for the service of pitching the ideas initially.

Scott's reliance on *Gunther-Wahl Productions, Inc. v. Mattel, Inc.*, 104 Cal. App. 4th 27 (2002), in this regard is misplaced. (Opp. 13.) The court held only that it was error, "under the particular facts in the case at bench," to instruct a jury that it could disregard evidence that the defendant requested an idea submission. *Id.* at 31, 43. That does not mean that Scott's inclusion of such an allegation satisfies the Ninth Circuit's requirements for pleading *Desny* claims in this case.

Scott alleges that he had pitched a movie and several "story premises" to Disney since the 1980s, "which Disney subsequently paid him to write," and that he again pitched his thoughts on a *Muppet Babies* reboot to win a screenwriter's job. (SAC ¶ 92.) Scott's allegation that he hoped or expected to "subsequently" be "paid . . . to write" the *Muppet Babies* reboot (*id.*) precludes an implied contract as a matter of law.

### 2. Scott Does Not Dispute That the *Muppet Babies* Reboot Lacks Any Substantial Similarity to His 2016 Pitch.

Scott misapprehends the premise of Disney's argument that "the supposedly new and different ideas he allegedly pitched to Disney in 2016 bear no substantial similarity to Disney's *Muppet Babies* reboot" (Mot. 14), responding that "copyright-type protectability is not an element of a misappropriation claim." (Opp. 13.) Scott's argument is a nonsequitur: Disney's argument is founded not on copyright protectability but rather on the fact that the bulk of the ideas Scott allegedly shared in 2016 were

-9-

already known to Disney, whether from the 1980s production bible or the original *Muppet Babies* series, thereby destroying consideration for any alleged implied contract as a matter of law. *See Desny v. Wilder*, 46 Cal. 2d 715, 739 (1956). Scott's own allegations, including the production bible attached to the SAC, establish that Disney already had access to any ideas contained within those works.

Scott bears the burden of showing that Disney's reboot is substantially similar to *new* ideas that Scott allegedly disclosed in 2016, which he has not and cannot do. "[C]opying less than substantial material is non-actionable," *Benay v. Warner Bros. Ent.*, 607 F.3d 620, 631 (9th Cir. 2010) (internal quotation marks omitted), *overruled on other grounds by Skidmore*, 952 F.3d at 1065-69, and, as demonstrated in Disney's moving papers, of those alleged ideas in Scott's 2016 pitch materials that were conceivably new and different, Scott has failed to plausibly allege, as he must, that Disney "actually used them" in the reboot, *Spinner v. Am. Broad. Cos.,* 215 Cal. App. 4th 172, 184 (2013). Beyond anemically suggesting that whether "Disney used" his alleged ideas is a "question[] of fact," (Opp. 14), Scott does not contest that any *new* ideas he allegedly pitched to Disney in 2016 share no substantial similarity to the *Muppet Babies* reboot as a matter of law (*see* Mot. 14-16). He contends only that the fact that his 2016 "presentations referenced and included material from the prior episodes is not determinative, including because they also included new material for a new project." (Opp. 14.) But the reboot and pitch materials—incorporated into the SAC and properly before the Court—are not substantially similar. Discovery will not impact the conclusion that Scott's *Desny* claim fails as a result.

### 3. Scott's Implied-Contract Claim Is Time-Barred.

The statute of limitations on a *Desny* claim begins to run when a defendant's use of a plaintiff's alleged idea is disclosed to a substantial segment of the public. *Benay,* 607 F.3d at 633 (citing 4 Nimmer on Copyright § 19D.07[D]; *Thompson v. Cal. Brewing Co.*, 191 Cal. App. 2d 506, 510 (1961)). Scott's invocation of the discovery rule here is premised on cases addressing violations of a specific federal statute and for copyright

1  infringement—cases which are irrelevant in the context of Scott's state-law *Desny* claim.
2  (*See* Opp. 14 (citing, *inter alia*, *Lyons v. Michael & Assocs.*, 824 F.3d 1169, 1171 (9th
3  Cir. 2016) (discussing FDCPA claim, noting that the Supreme Court "held that the
4  discovery rule does not apply to the Fair Credit Reporting Act")).)  Scott also ignores that
5  the seminal appellate case on when the limitations period for a *Desny* claim is triggered—
6  *Thompson v. California Brewing Co.*, 191 Cal. App. 2d 506 (1961)—affirmed the
7  dismissal of such a claim at the pleadings stage.  Scott instead erroneously asserts that
8  Disney relies on two cases that are not cited in Disney's argument on the statute of
9  limitations and, indeed, do not even address the topic.

Apart from his inapt and unexplained invocation of a discovery rule, Scott does not dispute that articles and trailers about the *Muppet Babies* reboot widely publicized the reboot well before March 20, 2018.  (Mot. 16-18.)  Scott argues only that those publications did not disclose specific ideas for the reboot that he allegedly shared with Disney executives.  (Opp. 14-15.)  He is wrong, as verified by a review of the judicially noticeable materials submitted with Disney's Motion.  Those publications disclosed that the "Nanny" character had been cast; that the reboot would be computer-animated; that it would be "[s]et in the vibrant playroom of an urban brownstone with an expansive backyard"; and that it would feature fantasies "told from the babies' perspective" to "encourage creative thinking and imagination," of the type Scott referenced in his pitch. (RJN, Exs. B-1–B-14, C-6.)  Scott does not dispute that the public disclosure of these elements triggered the statute of limitations on his implied-contract claim, which thus expired before he filed suit.

**C.      Scott Still Has Failed to Plead a Viable Fraud Claim with Particularity.**

In response to the Court's observation that the First Amended Complaint "suggests an affirmative statement by Disney that it would pay Scott for his ideas, but the FAC does not identify 'the who, what, when, where, and how' of any such statement," (Prior MTD Ruling at 12), Scott cites an email containing a question and a comment which he contends reflects "Disney's executives [sic] false representation" (Opp. 15): "Would you

send us a one sheet on the new creative direction you intend to take with the show. . . . This will help us move the project forward." (*Id.* (quoting SAC ¶ 97).) The language quoted by Scott clearly does not contain an "affirmative statement by Disney that it would pay Scott for his ideas," nor does Scott contend as much. Rather, Scott takes issue with the purported "misrepresentation—that Disney was considering a project with Scott," (Opp. 16), apparently in reference to the comment that a one-sheet from Scott would "help [Disney] move the project forward," (SAC ¶ 97). While Scott contends that the Disney executives falsely represented "that they were considering moving forward on the new *Muppet Babies* project with Scott," (Opp. 16), Scott's own allegations show that they did not make a commitment to engage Scott as a writer on the reboot. Asking Scott for a one-sheet so they could evaluate Scott as a potential writer is consistent with them having done so, even if they ultimately rejected him. Nor does Scott's argument that "Disney already was assembling a team that did not include Scott" (*id.*) render false any comment by the Disney executives suggesting that Scott was being considered as an addition to that team. If anything, Scott's narrative indicates that Disney was in the process of hiring writers to work on the *Muppet Babies* reboot and was open to considering Scott for such a role—but ultimately decided against it.

Scott's arguments, tied to a purported false representation, are inconsistent with a claim for promissory fraud based on a failure to disclose an intent not to comply with an implied agreement for payment. *See, e.g.*, *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002). However, to the extent Scott attempts to revive a promissory-fraud claim at oral argument, the claim still fails: Scott cannot plead promissory fraud without alleging specific facts showing Disney "harbored an intention not to be bound by terms of the contract at formation," and "intent not to perform cannot be proved simply by showing a subsequent failure to perform." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1109-10 (C.D. Cal. 2015) (citations omitted). Like the version this Court already dismissed with leave to amend, the SAC once again fails to do so.

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss the Second Amended Complaint's first through fourth, sixth, and seventh causes of action with prejudice.

DATED: September 2, 2022

MUNGER, TOLLES & OLSON LLP
ERIN J. COX
BRANDON E. MARTINEZ

By:    */s/ Erin J. Cox*
       Erin J. Cox

Attorneys for The Walt Disney Company