UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD EHRENBERG et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>THE WALT DISNEY COMPANY,<br><br>     Defendant. | Case No. 2:22-cv-01136-SB-SK<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [DKT. NO. 47] |

This copyright dispute involves the 2018 reboot of the *Muppet Babies* television show, which Plaintiff Jeffrey Scott helped develop in the 1980s.  When Defendant The Walt Disney Company (Disney) moved to dismiss Plaintiffs' First Amended Complaint (FAC), the Court rejected several of its arguments but found some deficiencies in the FAC and allowed Plaintiffs to replead.  Dkt. No. 45. Disney now moves to dismiss most of the claims in Plaintiffs' Second Amended Complaint (SAC).  Dkt. No. 47.[1]  The Court has considered the parties' arguments in their written submissions and at the hearing on September 16, 2022.  Because Plaintiffs have plausibly alleged their claims, the motion is denied.

---

[1] Disney represents that counsel discussed the substance and potential resolution of the motion by telephone and email, Dkt. No. 47 at 2 of 27, in violation of the Court's requirement that parties must meet and confer either by videoconference or in person (and certify their compliance), Dkt. No. 11 at 8.  The Court declines to strike the motion but admonishes the parties to pay careful attention to the Court's orders in the future.  Further disregard of the Court's orders is likely to result in an order to show cause why sanctions should not be imposed.

I.

The facts below are alleged in Plaintiffs' SAC—which largely incorporates the allegations in the FAC with some added details—and are accepted as true for purposes of Disney's Rule 12(b)(6) motion.

Scott is an acclaimed screenwriter with decades of experience developing animated children's television shows. Dkt. No. 46 ¶ 2 (SAC). In 1983, Marvel Productions, Ltd. (Marvel), with the participation and approval of Jim Henson and The Henson Company, asked Scott to create a "production bible" and write scripts for a new series depicting younger versions of the Muppets characters created by Henson. *Id.* ¶¶ 3, 14. Scott wrote the production bible, which "created and defined the foundational elements" of the *Muppet Babies* show, along with the scripts for all but four of the *Muppet Babies* episodes produced in the show's first three years. *Id.* ¶¶ 3–4, 22. The production bible significantly expanded on the existing Muppets characters, developing their "kid" versions, adding character traits and relationships, and creating original running gags associated with each character. *Id.* ¶ 23. It also added an entirely new character, a nanny, and created show structures including fantasy scenes in new environments, the use of live action footage and photographs, and "how the show uses music." *Id.* Although Henson suggested the creation of a nanny character, he "originally envisioned [her] as 'Sweetums, the big Muppet Ogre.'" *Id.* ¶¶ 23, 25. Scott instead developed her as a human character with distinctive colored socks. *Id.* Scott's scripts garnered three Emmy awards and a Humanitas Prize. *Id.* ¶ 4.

Scott was not an employee of Marvel or Henson and never agreed to convey his copyright in the production bible or the scripts to them. *Id.* ¶¶ 3–4. Although Marvel drafted written agreements and proposed them to Scott, Scott disagreed with some terms and did not sign them; instead, the parties operated under an oral agreement that incorporated some of the terms of the unsigned written agreements. *Id.* ¶ 14. Consistent with their agreement, (1) Marvel paid Scott $12,000 per script until 1986, when it increased payment to $13,500 per script; (2) Marvel gave Scott the right in perpetuity to write the script for each new episode produced; (3) Marvel agreed to pay, and did pay, Scott a $3,500 royalty for each new episode produced; and (4) Marvel agreed to give him a "Developed for Television by" credit on each episode in perpetuity. *Id.* When Scott left the series in 1986, Jim Henson wrote to him, "Thank you for all you've done for MUPPET BABIES. I think it's a terrific series—because of you." *Id.* ¶ 4.

2

Plaintiffs allege that Marvel complied with the terms of its agreement with Scott, but Disney, its successor-in-interest, has not.  *Id*. ¶ 14.  In 2014, Scott suggested that Disney produce new *Muppet Babies* shows.  *Id*. ¶ 16.  The vice president at Disney's The Muppets Studio told Scott that Disney was planning other Muppets projects including the re-release of *Muppet Babies* and expressed interest in producing new episodes.  *Id*. ¶ 17.  Scott met with Disney executives in early 2016 and gave them his ideas for a *Muppet Babies* reboot.  *Id*. ¶ 18.  At their request, Scott sent Disney his written ideas along with some of his scripts.  *Id*.  In a "pitch" document Scott gave Disney on March 4, 2016, Scott offered ideas for the reboot including:

> making the nursery a big warm room in a charming old house, furnished with art supplies, books, a table, a play area, and other things; adding an outdoor play area with play equipment and other elements; making the nanny character younger; structuring episodes around the *Muppet Babies* encountering problems in the real world and using their imaginations to explore, amplify, and resolve them; and others.

*Id*.  Scott also suggested updating the nanny character by having her socks change in every episode, updating the animation to computer-generated (CG) imagery, and expanding the nursery room and outdoor playground.  *Id*. ¶ 19.

Beginning in March 2018, Disney released three new seasons of *Muppet Babies*, totalling 71 episodes and one special.  *Id*. ¶¶ 6, 47.  Plaintiffs allege that the reboot of the series is derived from and permeated with elements from Scott's production bible and 1980s scripts and that it incorporates the ideas he conveyed to Disney in 2016.  *Id*. ¶¶ 5, 19, 47.  Plaintiffs' SAC includes 11 pages of examples of content in the reboot episodes that allegedly copied the ideas in Scott's production bible and scripts.  *Id*. ¶¶ 24–46.  Disney, however, has neither paid Scott for his contributions nor given him any credit in the show.  *Id*. ¶¶ 19, 47.

Scott filed suit against Disney in this Court in 2020, alleging that Disney had willfully infringed his copyright in the production bible.  *Id*. ¶ 48.  The Court dismissed Scott's action in March 2021 because the copyright was not disclosed as an asset in a bankruptcy proceeding that Scott filed in 2003.  *Scott v. Walt Disney Co.*, No. 2:20-CV-09709-SB-SK, 2021 WL 1557744 (C.D. Cal. Mar. 30, 2021).  Scott then moved to reopen his 1995 and 2003 bankruptcy proceedings, amended his schedule of assets, and obtained permission for Plaintiff Howard Ehrenberg (the Trustee) to represent him in prosecuting the claims in this case.  Dkt. No. 46

3

¶¶ 52–58.  Plaintiffs filed this suit in February 2022.  Dkt. No. 1.[2]  After Disney moved to dismiss the FAC, the Court rejected Disney's standing challenge and found that Plaintiffs had plausibly alleged that some nontrivial elements in Scott's production bible and script were protectable and that Disney had not shown it was entitled to dismissal of the Trustee's breach of contract claim.  Dkt. No. 45.  The Court held that Plaintiffs had not adequately alleged substantial similarity or a claim for fraud based on an affirmative misrepresentation and allowed Plaintiffs to replead their claims for copyright infringement, breach of implied contract, and fraud with greater detail.  *Id*.

Plaintiffs' SAC, like the FAC, alleges claims by the Trustee for copyright infringement and declarations of co-ownership relating to both the production bible and the 1980s scripts, along with a claim for breach of Marvel's 1983 agreement with Scott.  Dkt. No. 46 ¶¶ 61–87.  Scott also alleges claims for breach of implied contract and fraud relating to his submission of ideas to Disney in 2016.  *Id*. ¶¶ 88–101.  Disney now moves under Rule 12(b)(6) to dismiss all the claims in the SAC except the Trustee's breach of contract claim.  Dkt. No. 47.

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In resolving a Rule 12(b)(6) motion, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.  That is, a pleading must set forth allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Assuming the veracity of well-pleaded factual allegations, a court next must

---

[2] Scott also filed a new action in state court, which the parties agreed would be dismissed without prejudice upon the filing of the FAC in this case.  Dkt. No. 20 ¶ 26.  The SAC erroneously repeats this allegation, Dkt. No. 46 ¶ 51 (alleging that the state court complaint "is currently pending and . . . will be dismissed, without prejudice, after the filing of this first amended complaint"), and it is unclear whether the state court action has been dismissed.

"determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

III.

A.

Plaintiffs' first four claims allege copyright infringement and seek a declaration of co-ownership as to Scott's production bible (Counts 1 and 3) and *Muppet Babies* scripts (Counts 2 and 4). Disney contends that these claims fail because Plaintiffs have not alleged substantial similarity between any protectable elements of Scott's work and the *Muppet Babies* reboot.

Disney is correct that the Court must determine whether Plaintiffs have alleged substantial similarity based on at least some protected elements. *See Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004) ("Because the requirement is one of substantial similarity to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work."). But Disney is mistaken in asserting that Plaintiffs have wholly failed to so allege here. In their SAC, Plaintiffs added numerous examples of content in the *Muppet Babies* reboot that Disney allegedly copied from Scott's production bible and scripts. While Disney persuasively argues that much of the allegedly copied content is generic and unprotectable, Plaintiffs plausibly allege substantial similarity as to at least some protectable elements of Scott's production bible and scripts.[3] For example, Plaintiffs plausibly allege that Disney, throughout the reboot, used the same nanny character with her distinctive colored socks, who is only ever seen from the legs down, created by Scott in his production bible and scripts. Dkt. No. 46 ¶ 25. Plaintiffs also plausibly allege substantial similarity between specific scripts written by Scott and specific reboot episodes. For example, they allege that the reboot episode "You Ought to Be in Pictures" copies

---

[3] Rule 12(b)(6) "does not provide a mechanism for dismissing only a portion of a claim." *Franklin v. Midwest Recovery Sys., LLC*, No. 8:18-CV-02085-JLS-DFM, 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9, 2020) (collecting cases). Because the Court finds that Plaintiffs have stated plausible claims for copyright infringement, it is unnecessary to determine whether other portions of their allegations are inadequate. For this reason, the Court need not now identify each protectable and unprotectable element in Scott's works.

Scott's "The Muppet Museum of Art" script, as both involve the characters
viewing impressionist artwork shown in photorealistic images, including Auguste
Rodin's "The Thinker" and paintings by Vincent van Gogh, Paul Cezanne, and
Pierre-Auguste Renoir. *Id.* ¶ 37.  And in both episodes, the character Animal
exclaims, "Renoir!" *Id.*  Although any one of these elements may not be
protectable, the "original selection, coordination, and arrangement of unprotectable
elements may be protectable expression . . . if those elements are numerous enough
and their selection and arrangement original enough that their combination
constitutes an original work of authorship." *Malibu Textiles, Inc. v. Label Lane
Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019) (cleaned up).  The combination of so
many specific elements in a short children's program—particularly where the
allegedly infringing work presents a very similar context as a reboot of the original
series that Scott helped develop—may be protectable and could support a finding
of substantial similarity under the extrinsic test applicable on a motion to dismiss.
*See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003) ("[T]he extrinsic
test is an objective measure of the 'articulable similarities between the plot,
themes, dialogue, mood, setting, pace, characters, and sequence of events.'"),
*overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir.
2020) (en banc); *Alfred v. Walt Disney Co.*, 821 F. App'x 727, 729 (9th Cir. 2020)
(reversing dismissal of copyright claim where "there are striking differences
between the two works . . . but the selection and arrangement of the similarities
between them is more than de minimis").[4]  Accordingly, Disney has not shown
that it is entitled to dismissal of Plaintiffs' copyright claims in Counts 1 through 4.

## B.

Scott's claim for breach of implied contract in Count 6 alleges that when
Scott submitted his ideas for a *Muppet Babies* reboot to Disney in 2016 and when

---

[4] Although the court in *Alfred* noted that "expert testimony would aid in
determining whether the similarities Plaintiffs identify are qualitatively
significant," it did not, as Plaintiffs suggest, prohibit dismissal of copyright claims
before the parties have obtained expert testimony.  821 F. App'x at 729.  *Cf.
Masterson v. Walt Disney Co.*, 821 F. App'x 779, 781 (9th Cir. 2020) (rejecting
argument that determining substantial similarity necessarily requires expert
testimony and affirming Rule 12(b)(6) dismissal of copyright claims); *Carlini v.
Paramount Pictures Corp.*, No. 21-55213, 2022 WL 614044 (9th Cir. Mar. 2,
2022) (affirming this Court's Rule 12(b)(6) dismissal of copyright claim for lack of
substantial similarity review where no expert opinions were offered).

Disney subsequently solicited additional ideas from him, they "entered into an implied in fact contract whereby Disney agreed to pay Scott for the appropriation and use of his ideas for elements of the show." Dkt. No. 46 ¶ 89.  Plaintiffs allege that Scott was an experienced writer who had a history of submitting ideas and story premises to Disney, which Disney subsequently paid him to write; that Disney's website stated that Disney does not accept unsolicited submissions; and that

> Scott received representations and warranties, implied and express, that Disney would not exploit his ideas without compensating him for them, including monetary compensation and a screen credit reflecting his contributions to the *Muppet Babies* reboot, as is required under television industry custom and practice and is Disney's practice with respect [to] idea submissions that it requests and accepts.

*Id*. ¶¶ 90–92.  Disney allegedly breached its implied contract when it used Scott's ideas in the reboot without paying him or giving him a screen credit.  *Id*. ¶ 94.

Under California law, "an idea can be the subject of an express or implied contract, and its disclosure and submission can be consideration for a promise to pay compensation." *Spinner v. Am. Broad. Companies, Inc.*, 215 Cal. App. 4th 172, 184 (2013) (citing *Desny v. Wilder*, 46 Cal. 2d 715, 733–34 (1956)); *see also Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011) (en banc) ("In *Desny*, the California Supreme Court recognized that a writer and producer form an implied contract under circumstances where both understand that the writer is disclosing his idea on the condition that he will be compensated if it is used.").  To prevail on a "*Desny* claim," Scott must establish that (1) he clearly conditioned the submission of his ideas on an obligation to pay for their use, (2) Disney, knowing this condition before Scott disclosed the ideas, voluntarily accepted the submission of the ideas; and (3) Disney found the ideas valuable and actually used them by basing its work substantially on Scott's ideas, rather than on Disney's own ideas or ideas from other sources.  *Spinner*, 215 Cal. App. 4th at 184.  Disney challenges the adequacy of Scott's *Desny* claim on three grounds.

1.

Disney first argues that Plaintiffs' allegations establish at most an expectation that Disney would pay Scott only if it hired him to write scripts for the *Muppet Babies* reboot—not for merely using his ideas.  *See Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 902 (9th Cir. 1987) ("[N]o contract may be implied where an

7

idea has been disclosed not to gain compensation for that idea but for the sole purpose of inducing the defendant to enter a future business relationship." (citing *Faris v. Enberg*, 97 Cal. App. 3d 309, 318–20 (1979))). While Scott's history of idea submissions to Disney may support this expectation, the Ninth Circuit has held dismissal of *Desny* claims improper under similar circumstances, even with more conclusory allegations. In *Grosso v. Miramax Film Corp.*, the court reversed a Rule 12(b)(6) dismissal of a *Desny* claim where the complaint alleged that "the idea was submitted by Plaintiff to Defendants with the understanding and expectation, fully and clearly understood by Defendants that Plaintiffs would be reasonably compensated for its use by Defendants." 383 F.3d 965, 967 (9th Cir. 2004), *opinion amended on denial of reh'g*, 400 F.3d 658 (9th Cir. 2005). In *Montz*, the Ninth Circuit specifically emphasized the significance of industry practices for *Desny* claims in the television writing industry, beginning its opinion by stating that "[i]n Hollywood, writers commonly submit copyrighted scripts to producers with the understanding that if the script is used, the producer must compensate the writer for the use of the copyrighted material." 649 F.3d at 976; *see also id*. at 978–79 (discussing the practice of pitching "scripts or concepts to producers"). The court then concluded that allegations of an implied contract based on industry practice were sufficient to state a *Desny* claim. *Id.* at 978. On the other hand, "bare allegations [about industry practice], stripped of relevant details that might support [a] claim for an implied-in-fact contract" are insufficient to plead a *Desny* claim. *Daniels v. Walt Disney Co.*, 958 F.3d 767, 775 (9th Cir. 2020).

Here, Plaintiffs allege that Disney had a history of paying Scott to develop the ideas he proposed to Disney, that "Disney solicited additional ideas from Scott," and that "Scott received representations and warranties, implied and express, that Disney would not exploit his ideas without compensating him for them." Dkt. No. 46 ¶¶ 89–92. These allegations, together with Plaintiff's claims about industry custom, are more than the bare allegations in *Daniels*. Under *Grosso* and *Montz*, they suffice to allege a plausible *Desny* claim.

2.

Disney next argues that Scott's *Desny* claim fails because the ideas Scott allegedly pitched to Disney in 2016 bear no substantial similarity to the *Muppet Babies* reboot and most of them were already known to Disney. A *Desny* claim requires substantial similarity between the plaintiff's idea and the defendant's work, but "because the claim is based in contract, unauthorized use can be shown by substantially similar elements that are not protected under copyright law."

8

*Benay v. Warner Bros. Ent.*, 607 F.3d 620, 631 (9th Cir. 2010), *overruled on other grounds by* *Skidmore*, 952 F.3d 1051.  Thus, a finding of no substantial similarity for copyright purposes does not preclude a finding of substantial similarity for purposes of a *Desny* claim.  *Id*.  Relying on a case discussing the the de minimis exception for copyright infringement, *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 878 (9th Cir. 2016), Disney argues that the only new contribution suggested by Scott that appeared in the reboot was that the nanny character's socks change in each episode, which Disney contends is too insignificant to establish substantial similarity.  But Plaintiffs allege that Disney's use of Scott's 2016 suggestions went beyond changing socks:

> Scott's ideas were different from those contained in his scripts and bible.  Scott suggested updating the Nanny character by making her younger and having her socks change in different episodes.  He proposed updating the animation to CG, expanding and updating the nursery into a house and making the nursery room bigger with things like books, a table, a play area, arts supplies, easels, and other furnishing; and expanding the outdoor playground.  Disney incorporated those ideas into the reboot without compensating Scott.

Dkt. No. 46 ¶ 19.  Moreover, "[i]t is settled law in California that novelty is not required for an implied-in-fact contract claim arising out of unauthorized use." *Benay*, 607 F.3d at 629 (citing *Desny*, 46 Cal.2d at 733 (disclosure of an idea may be protected by "contract providing that it will be paid for regardless of its lack of novelty"); *Chandler v. Roach*, 156 Cal.App.2d 435, 441–42 (1957)).  Plaintiffs' allegations are sufficient at the pleading stage to plausibly claim that Disney substantially used Plaintiff's ideas without compensation in breach of an implied contract.

### 3.

Finally, Disney argues that Scott's *Desny* claim is time-barred.  *Desny* claims are subject to the two-year statute of limitations in Cal. Civ. Proc. Code § 339.  *Benay*, 607 F.3d at 633.  It is undisputed that Scott first asserted his *Desny* claim in his previous federal lawsuit filed on October 22, 2020, and Disney contends that, taking into account the parties' tolling agreement that ran from January 31 to September 4, 2020, Scott's *Desny* claim is timely only if it accrued on or after March 20, 2018.  Dkt. No. 47 at 17.

"Because the parties' intent is difficult to ascertain in implied-in-fact contract cases, California courts generally assume that the accrual date is the date on which the work is released to the general public." *Benay*, 607 F.3d at 633. Plaintiffs represent that the *Muppet Babies* reboot premiered no earlier than March 23, 2018 (within the statute of limitations as calculated by Disney), Dkt. No. 50 at 15, and Disney does not suggest otherwise.  Instead, Disney argues that Scott's ideas were disclosed to "a substantial segment of the population" before March 20, 2018 through a combination of media coverage and teasers for the reboot.  *See Thompson v. California Brewing Co.*, 191 Cal. App. 2d 506, 510 (1961) (test use of plaintiff's idea for advertising beer "disclosed the idea to a substantial segment of the public in two metropolitan centers in this state," which "destroy[ed] any further marketability of the idea" and triggered statute of limitations).  Disney relies on numerous exhibits involving media coverage of the release, of which it asks the Court to take judicial notice.  Dkt. No. 48.[5]

Plaintiffs object to the propriety of judicial notice and also invoke the discovery rule, arguing that there is no evidence Scott was or should have been aware of Disney's use of his ideas before March 2018.  Plaintiffs rely on *Lyons v. Michael & Assocs.*, 824 F.3d 1169 (9th Cir. 2016), which addressed the discovery rule's application to a federal claim under the Fair Debt Collection Practices Act. Disney disputes the discovery rule's applicability to a *Desny* claim, but neither side identifies any authority addressing that issue, nor has the Court found any.  It is unnecessary for the Court at this stage to resolve this apparently novel legal question, because even if the discovery rule does not apply and the Court may properly consider Disney's exhibits (which the Court also need not decide), Disney has not shown that the statute of limitations bars Scott's *Desny* claim.

In *Benay*, on which Disney relies, two screenwriters alleged that a movie's creators had copied their ideas without permission.  As to their *Desny* claim, the Ninth Circuit held that the district court properly rejected the argument that the statute of limitations began to run "before the first public release of the film."  607 F.3d at 633.  The court observed that the accrual date of an implied-in fact contract depends on the nature of the contractual obligations, and the general difficulty of ascertaining the parties' intent has led to the general rule that "the accrual date is

---

[5] Disney also requests that the Court take judicial notice of copies of a *Muppets* movie and several episodes of the *Muppets Babies* reboot, to which Plaintiffs do not object.  Those recordings do not alter the Court's analysis, so the request is DENIED as moot.

the date on which the work is released to the general public." *Id*.  In *Thompson*, which the *Benay* court cited, the plaintiff pitched an advertising concept to a brewery, and the brewery ran a test advertising campaign using that idea in two major cities.  The court held that this widespread use of the plaintiff's idea began the clock for the statute of limitations because it represented a breach of the alleged implied contract "in the absence of an express or implied understanding that a 'test' would be free, or that any obligation to pay would be postponed by the test." *Thompson*, 191 Cal. App. 2d at 508.

Both *Benay* and *Thompson* implicitly applied the foundational principle— with which Disney agreed at the hearing—that "[a] cause of action accrues when the claim is complete with all of its elements."  *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1528 (2006)).  In *Thompson*, the fact that the widespread disclosure of the plaintiff's advertising idea through the test advertising destroyed the marketability of the idea suggested that, "absent some evidence of a contrary understanding between the parties," the terms of the implied contract required payment at the time of disclosure.  191 Cal. App. 2d at 510.  Thus, the breach occurred, and the cause of action accrued, when the defendant failed to pay the plaintiff upon launching the test advertising campaign.  Assuming such terms for implied contracts made some sense in the advertising context because "[t]he 'testing,' in limited markets, of new products, brands, labels, promotional and advertising schemes, and marketing programs is common" and "[a]ny rule that, as a matter of law, such a 'test' is free, could seriously prejudice the legal position of persons who have ideas to sell." *Id*.

Such a presumption is inapplicable in the context of this case, which does not involve advertising ideas.  Scott's ideas for the reboot of *Muppet Babies* evidently did not have value to anyone other than Disney, the successor-in-interest to the original producers of *Muppet Babies* and, presumably, the only entity that could reboot *Muppet Babies*.  Since Scott had already disclosed his ideas to Disney, Disney has not explained how disclosure of Scott's ideas to the public through advertising of the reboot had any effect on their marketability.  Instead, the alleged implied contract was for the use of Scott's ideas in the *Muppet Babies* reboot.  Consistent with the general presumption stated in *Benay* that *Desny* claims in the screenwriting context accrue when "the work is released to the general public," 607 F.3d at 633, the implied contract therefore was not breached, and the claim did not accrue, until the reboot series was released.  Disney suggested at the hearing that the alleged implied contract was for payment for any use of Scott's ideas and that disclosing them to the public through media coverage of the reboot constituted use.  Disney's argument mischaracterizes Scott's claim.  On this

record, particularly when viewing the pleadings in the light most favorable to
Plaintiffs, there is nothing to suggest that Scott expected to be paid if Disney
disclosed his ideas while promoting the reboot.  Because the disclosure of Scott's
ideas to the public through media coverage of the reboot did not breach his implied
contract with Disney, it did not start the clock on his *Desny* claim.

Thus, Disney has not identified any reason to disturb the general rule that
Scott's *Desny* claim accrued when Disney released the *Muppet Babies* reboot
episodes to the general public without paying him.  *Benay*, 607 F.3d at 633.
Disney therefore has not shown that Scott's claim must be dismissed as time-
barred.  *Cf. Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir.
1995) (explaining that a Rule 12(b)(6) motion to dismiss based on a statute of
limitations may only be granted when the face of the complaint establishes
"beyond doubt that the plaintiff can prove no set of facts that would establish the
timeliness of the claim," and any uncertainty about "factual and legal issues"
precludes dismissal).

## C.

Finally, Disney contends that Plaintiffs have not pleaded Scott's fraud claim
with the particularity required by Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In alleging
fraud or mistake, a party must state with particularity the circumstances
constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a
person's mind may be alleged generally.").  To satisfy Rule 9(b), parties must
allege "the who, what, when, where, and how of the misconduct charged."
*Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019)
(quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

In its ruling on Disney's previous motion to dismiss, the Court expressed
uncertainty about the nature of Scott's fraud claim, observing that it was unclear if
Plaintiffs intended to allege an express misrepresentation and that they had not
satisfied Rule 9(b) as to any such claim.  Dkt. No. 45 at 12.  Plaintiffs' SAC
includes new allegations of specific misleading representations by Disney:

> When Disney executives D'Ambrosia and Sapire solicited Scott's
> ideas for a new Muppet Babies series, including in Sapire's March 4,
> 2016, email to Scott, in which she stated, "Would you send us a one
> sheet on the new creative direction you intend to take with the show.
> . . . This will help us move the project forward," she and the other
> Disney executives copied on her email . . . knew, and concealed from

Scott, that they had no intention of "moving forward" with Scott, that Disney already was preparing for a Muppet Babies reboot; that they were in the process of assembling a production team for the reboot; and that they and their superiors had no intention of offering Scott an opportunity to work on the reboot or to pay him for his ideas, which they intended to use without complying with their obligations under the parties' implied agreement.

Dkt. No. 46 ¶¶ 97–98.

Viewing the pleadings in the light most favorable to Plaintiffs, the SAC plausibly alleges that (1) Disney executives misrepresented to Scott that they were prepared to "move forward" with him on a reboot of *Muppet Babies* and that his disclosure of "the new creative direction [he] intend[ed] to take with the show" would facilitate the project, (2) the executives knew and concealed from Scott that they were already preparing for the reboot and assembling a production team and that they had no intention of "moving forward" with Scott or letting him "take" "creative direction" of the reboot, and (3) the executives deliberately misled Scott to induce him to share his ideas, which he did. Plaintiffs' allegations identify the specific individuals involved and a specific email in which one of them allegedly made misleading representations and omissions. These allegations, viewed in the light most favorable to Plaintiffs, are sufficient to state a claim for fraud.[6] Disney is therefore not entitled to dismissal.

---

[6] Some of Plaintiffs' allegations suggest a fraud by omission theory, and the Court previously observed that "the crux of Scott's . . . allegation seems to be that Disney failed to disclose its intent not to comply with an implied agreement to pay him." Dkt. No. 45 at 12. Although it would have been helpful for Plaintiffs to more clearly identify which theory of fraud they intend to pursue, they appear to focus on allegations of misrepresentation rather than on fraud by omission.

IV.

Because Disney has not shown that Plaintiffs have failed to plausibly allege any of their claims in the SAC, the motion to dismiss is DENIED.

Date: September 16, 2022

Stanley Blumenfeld, Jr.
United States District Judge